IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2024

## STATE OF TENNESSEE v. KEVIN DAVIDSON

**Appeal from the Criminal Court for Sullivan County**
**Nos. S70075, S70076       James F. Goodwin, Jr., Judge**

———————————————————

### No. E2024-00391-CCA-R3-CD

———————————————————

Defendant, Kevin Davidson, appeals the trial court's order revoking his probationary sentence for ten drug-related convictions in two separate cases. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Andrew J. Gibbons, District Public Defender, and Melissa G. Owens, Assistant Public Defender, Blountville, Tennessee, for the appellant, Kevin Davidson.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Kristen Rose, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

According to the judgment forms, on October 10, 2019, Defendant pled guilty to one count of possession of methamphetamine with intent to sell or deliver, one count of possession of Alprazolam with intent to sell or deliver, three counts of possession of drug paraphernalia, and one count of possession of chloromethcathinone in case no. S70075. On November 19, 2019, Defendant pled guilty to one count of possession of methamphetamine with intent to sell or deliver, one count of possession of Alprazolam with intent to sell or deliver, and two counts of possession of drug paraphernalia in case no. S70076. The trial court imposed an effective eighteen-year sentence suspended to supervised probation after service of one year in the Sullivan County Jail, to be served

consecutively to a probation violation in an unrelated case. Defendant was also ordered to complete the Tennessee Recovery Oriented Compliance Strategy Program ("TN-ROCS").

According to the record, a probation violation warrant was issued against Defendant on March 30, 2022. His probation was revoked on January 11, 2023, and he was reinstated to probation and TN-ROCS. The current violation of probation warrant was issued against Defendant on July 21, 2023, alleging that he violated the conditions of his probation by testing positive for amphetamine and methamphetamine on June 2, 2023, failing to report for a drug screen on five separate occasions in July 2023, and failing to be present for a routine home visit on July 6, 2023. The violation warrant further alleged that Defendant failed to successfully complete the TN-ROCS program by not calling the random drug screen number to see if his "color" was called or failing to comply when his "color" was called, failing to maintain contact with his TN-ROCS liaison during the month of July 2023, failing to maintain contact with his probation officer, and failing to contact Recovery Resources Sober Living House and move into one of their houses as ordered by his TN-ROCS liaison.

At the probation violation hearing, Defendant stipulated to the facts contained in the probation violation warrant and pled guilty to the probation violation. The trial court accepted Defendant's plea, revoked his probation, and conducted a disposition hearing.

At the disposition hearing, Defendant testified that he thought he would be sent to a treatment facility when he was first placed in TN-ROCS, but he was sent to live at home. When he was reinstated to probation in January 2023 after his first violation, he was sent to live "wherever" he could find. Defendant said that he went to live at a friend's house because he had "nowhere else to go." He admitted that he was told to "do rehab" and then get into a sober living house. After failing a drug test in March 2023, he spoke with Vicki Trammell from the TN-ROCS Program about getting into an inpatient facility. Defendant agreed that he failed a second drug test on June 2, 2023, and then stopped reporting to his probation officer, Colt Vaughn. Up to that point, he had been reporting regularly and had been present for home visits. Defendant testified that although he had not met with Ms. Trammell at the time of the violation hearing about reentering treatment, Ms. Trammell had recommended that he attend Synergy, a long-term inpatient treatment program. Defendant felt that he would be successful in the Synergy program because of the structure it provided. He said that he had no "steady" place to live because his father resided in Virginia, and Defendant was not allowed to live there because he was in TN-ROCS.

On cross-examination, Defendant admitted that he was supposed to enter TN-ROCS after being released on parole from a five-year sentence in another case and serving one year "flat" in this case. He said that he was supposed to go to a sober living house upon his release, but he was released "straight to the street." Defendant admitted that he never reported to probation upon being released the first time. After being reinstated to probation, he failed a drug screen and did not report for four additional drug screens when

his color was called. He said, "I relapsed, and I just didn't report." Defendant also admitted that he was supposed to go to Recovery Resources Sober Living House, which could have offered structure, but he did not go there because he had relapsed and "just didn't care, I guess."

Defendant testified that he was arrested in Virginia for the current probation violation and that he was there "[d]oing drugs." When asked how he encountered police in Virginia, Defendant said: "One of them knows me over there, I went to school with her, she r[a]n my name, r[a]n NCIC on me and I seen I had a warrant for me over here." He asserted that he obtained drugs "[w]herever" and that there were people "all over Bristol" selling them. Defendant said that he did not know where to currently buy drugs because he was no longer using them and that he last used Suboxone two to three months earlier while incarcerated in the Sullivan County Jail. When the trial court asked Defendant where he obtained the Suboxone, he replied: "It was just there. You know, I really don't want to put nobody's name out there like that. I've done the time, you know, this is my crime, I just don't want any trouble, you know what I mean?"

Upon conclusion of the proof, the trial court noted that in both Recovery Court and TN-ROCS "relapses are going to happen, and we don't issue [v]iolation [r]eports because somebody relapses, and it's not just the first relapse. We don't issue [v]iolation [r]eports for multiple relapses." The court further noted that violations are issued because a probationer either stopped reporting, absconded, or broke another rule. Concerning Defendant's violations, the trial court concluded:

> So, [Defendant], you know, he says he relapsed and got scared and just stopped coming, stopped reporting, but [Defendant] relapsed, got back in addiction, and decided that addiction was easier than treatment, that's what happens. Then the reporting stops, then it all goes downhill. [Defendant], also its concerning that when asked on cross-examination, where he got his drugs, because he said he went to Virginia and got drugs and was using drugs in Virginia, they said, "well, where did you get them," "well, they're everywhere in Bristol," that's what he said. Then when the State tried to get more specific, his response was, and this was just either the next question, or the question after that, his response was "well, I really don't want to do drugs anymore, I don't know where you would get drugs in Bristol." And then when it comes right down to it, he testified that the last drug he used, illegally, was Suboxone, and when the court asked him where specifically "where did you get that Suboxone" he protects his source of supply. That leads me to the only conclusion that he wants to make sure that when he gets out of custody, that he will have his source of supply ready to continue his drug use. You know, this is [Defendant's], he has multiple, I didn't add them all up, at least three violations, I believe. How many violations do we show on the

card? Just two warrants, alright. So, we've got July 21, 2023, and we've got March 30, 2022, so, that's two [v]iolation [w]arrants.

Well, based on his testimony today, the court [is] of the opinion that [Defendant] is either unwilling or unable to comply with release into the community, his response both times for the TN[-]ROCS Program has been either to not show up at all, or to show up, do a little bit and then abscond.

The court ordered Defendant to serve the balance of his sentence in confinement, with credit for time served, and entered a formal revocation order confirming its judgment from which Defendant filed a timely appeal.

**Analysis**

Defendant asserts that the trial court abused its discretion by "failing to properly consider alternatives to the complete revocation" of his eighteen-year sentence. He further contends that the trial court erred "when it based its decision to revoke his sentence on his unwillingness to name the person who supplied him with Suboxone while in jail." The State argues that the trial court did not abuse its discretion and properly revoked Defendant's probation. We agree with the State.

It is within a trial judge's discretionary authority to revoke a defendant's probation upon finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). A violation of probation need not be established beyond a reasonable doubt; instead, the proof must be sufficient to "allow[ ] the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82.

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting *Harkins*, 811 S.W.2d at 82); *see State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.").

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke the defendant's probation. T.C.A. § 40-35-311(d)(1), (2); *Dagnan*, 641 S.W.3d at 756; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005).

Once a trial court decides to revoke a defendant's probation, it must then determine the appropriate consequences of the revocation. *Dagnan*, 641 S.W.3d at 756. The trial court may "impose one of several alternative consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions." *State v. Daniel*, No. M2021-01122-CCA-R3-CD, 2022 WL 6644369, at *2 (Tenn. Crim. App. Oct. 11, 2022) (quoting *Dagnan*, 641 S.W.3d at 757), *no perm. app. filed*.

As to the first *Dagnan* consideration, Defendant stipulated to the facts contained in the probation violation warrant and pled guilty to the probation violation. The trial court accepted Defendant's plea and properly revoked his probation. At that point, the court was not required to consider "alternatives to the complete revocation," as Defendant contends in his brief, or explain the various alternatives. A trial court is not required to "include specific phraseology in its ruling." *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *6 (Tenn. Crim. App. Dec. 1, 2023), *no perm. app. filed*.

Moving to the second prong of *Dagnan*, the trial court made sufficient findings to support its decision to order Defendant to serve the balance of his sentence in confinement. When considering the consequence of a revocation of probation, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (quoting *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023), *perm. app. denied* (Tenn. June 29, 2023)), *no perm. app. filed*; *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); *see State v. Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016); *see also State v. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002).

Defendant argues that the trial court abused its discretion "when it based its decision to revoke his sentence on his unwillingness to name the person who supplied him with

[S]uboxone while in jail."  However, we conclude that the trial court's consideration of Defendant's refusal to name his drug source was proper as it relates to Defendant's potential for rehabilitation.  The trial court believed that Defendant was not willing to reveal his source "because he wants to make sure that when he gets out of custody, that he will have his source of supply ready to continue his drug use."  We further point out that the trial court did not base its decision to order Defendant's original sentence into effect solely on Defendant's refusal to reveal his drug source.  The trial court clearly based its decision on the fact that each of the two times Defendant had been ordered to complete the TN-ROCS Program, he either failed to show up or he would "show up, do a little bit and then abscond."  Defendant admitted at the disposition hearing that he never reported to probation upon being released the first time.  After being reinstated to probation, he failed a drug screen and did not report for four additional drug screens when his color was called.  He said, "I relapsed, and I just didn't report."  Defendant also admitted that he was supposed to go to Recovery Resources Sober Living House, which could have offered the structure he claimed he needed, but he did not go there because he had relapsed and "just didn't care, I guess."  Additionally, Defendant was in another state using drugs when he was arrested for this probation violation.

Based on the record, we conclude that the trial court did not abuse its discretion in finding Defendant in violation of his probationary sentence and ordering him to serve the balance of his eighteen-year sentence in confinement.  Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JILL BARTEE AYERS, JUDGE